WO

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Sierp, et al., | No. CV-16-00189-PHX-GMS |
| Plaintiffs, | **ORDER** |
| v. | |
| DeGreen Partners LP, et al., | |
| Defendants. | |

Pending before the Court is the Motion to Dismiss and Strike by Defendants DeGreen Partners, LP, DeGreen Capital Management, LLC, and Keith DeGreen. (Doc. 22.) For the following reasons, the Court grants the motion in part and denies it in part.

## BACKGROUND

Defendant Keith DeGreen ("DeGreen") is a resident of Ohio and Arizona. (Doc. 1 at 2.) In 2009, DeGreen formed DeGreen Partners, LP ("DP"), which is a Delaware limited partnership with a principal place of business in Arizona. (*Id.* at 2–3.) DP's general partner was DeGreen Capital Management, LLC ("DCM"). (*Id.* at 3.) DeGreen is the Managing Member of DCM. (*Id.*) The Limited Partnership Agreement ("LPA") between DP and DCM vested DCM with sole discretion of investing and exercising powers on DP's behalf. (*Id.*)

In 2010, Robert Sierp, a resident of Texas, considered using DCM to manage some of his investments. (Doc. 1 at 4.) He ultimately decided not to invest in DCM at that time, but he did become acquainted with DeGreen. (*Id.*) DeGreen subsequently

sought Sierp's investments in both DP and DCM through various email correspondence as well as a presentation.  (*Id.*)  These emails included information about DP's successes and strategies, including statistics such as the company's alleged "263.04% cumulative return in its first twenty-six months of existence."  (*Id.*)  In these emails, DeGreen also assured Sierp that he and his wife were the only investors in DP, that they had invested one million dollars in the partnership of their personal funds, and that DP followed the same investment strategies as DCM.  (*Id.* at 5.)

In June 2012, Sierp became a limited partner of DP and invested $1.25 million in the company.[1]  (*Id.* at 1, 8.)  In November 2012, DCM's Vice President of Operations sent an email on behalf of DeGreen to Mr. Sierp reporting significant losses, but advising "I believe our holdings may present strong upside potential."  (*Id.* at 9.)  In August 2013, DeGreen informed Sierp and the limited partners that he would be unable to obtain Errors and Omissions ("E&O") insurance because of the losses.  (*Id.* at 10.)  Because of this, DeGreen sent Sierp several e-mails demanding a waiver releasing DeGreen and DCM of liability for certain claims.  (*Id.* 10–11.)  Sierp alleges "DeGreen, as an attorney, expressly advised Mr. Sierp that signing the waiver does not deprive you of the right to make a claim if we, or any of the independent parties involved with DP, engage in fraud or other criminal acts that result in losses."  (*Id.* at 11–12.)  Losses continued until DCM discontinued DP, and returned $240,412 of Sierp's principal in February 2014.  (*Id.* at 12.)

On January 26, 2016, Sierp filed a complaint alleging that he invested $1.25 million and "had DeGreen been honest with [Sierp] about the financial condition and performance of DP, [Sierp] would not have made the investment."  (*Id.* at 8.)  Specifically, Sierp alleges that DeGreen solicited his investment over the course of two years via e-mail, in-person meetings, and presentations.  (*Id.* at 4, 7.)  Sierp alleges that he was "particularly motivated by three material sales points and representations made by

---

[1] The Court hereby grants Defendants' Request for Judicial Notice for the following documents:  (Doc. 22, Ex. 1–6.)

DeGreen during those solicitations:  (1) that DeGreen would continue to maintain his own personal $1 million investment in DP; (2) that DP used the same research and protocols of DCM; and (3) DP was a long-term, three to five-year investment." (*Id.* at 7.) Sierp's complaint includes eight counts[2]:

1. Count 1 – Securities Fraud – All Defendants
2. Count 2 – Fraud in the Provision of Investment Advisory Services– DCM and DeGreen
3. Count 3 – Violation of A.R.S. § 44-1998 – All Defendants
4. Count 4 – Control Liability – A.R.S. § 44-1999 – DCM and DeGreen
5. Count 5 – Breach of Fiduciary Duty – All Defendants
6. Count 6 – Negligence – All Defendants
7. Count 7 – Negligent Misrepresentation – All Defendants
8. Count 8 – Common Law Fraud; Fraud by Omission – All Defendants

## DISCUSSION

**I.    Legal Standard**

Generally, to survive dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.' " *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  The plausibility standard "asks for more than

---

[2] Plaintiff withdrew the claims for aiding and abetting in a tort and for conspiracy to commit a tort.  (Doc. 1 at 17; Doc. 25 at 17.)

1    a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts

2    that are 'merely consistent with' a defendant's liability, it 'stops short of the line between

3    possibility and plausibility of entitlement to relief.' "  *Id.* (quoting *Twombly*, 550 U.S. at

4    555) (internal citations omitted).

5        When a plaintiff alleges claims that are rooted in fraud, even those arising under

6    state law, he must comply with the heightened pleading standard of Rule 9(b).  *Cafasso,*

7    *United States ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir.

8    2011); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) ("[W]hile a

9    federal court will examine state law to determine whether the elements of fraud have

10   been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the

11   *circumstances* of the fraud must be stated with particularity is a federally imposed rule.")

12   (internal citations omitted).  Therefore, state law fraud claims must also comply with the

13   pleading standards of Rule 9(b).

14       When analyzing a complaint for failure to state a claim under Rule 12(b)(6), "[a]ll

15   allegations of material fact are taken as true and construed in the light most favorable to

16   the nonmoving party."  *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996).  However,

17   legal conclusions couched as factual allegations are not given a presumption of

18   truthfulness, and "conclusory allegations of law and unwarranted inferences are not

19   sufficient to defeat a motion to dismiss."  *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir.

20   1998).

21   **II.    Analysis**

22       Defendants move to dismiss Sierp's Complaint on the basis of the sufficiency of

23   the allegations as well as numerous affirmative defenses.[3]

24   / / /

25   _____

26       [3] The Court has jurisdiction over this case pursuant 28 U.S.C. § 1332, which
     provides that "[t]he district courts shall have original jurisdiction of all civil actions

27   where the matter in controversy exceeds the sum or value of $75,000, exclusive of
     interest and costs, and is between . . . citizens of different States."   28 U.S.C. §

28   1332(a)(1).

### A.    The Adequacy of the Pleadings

Sierp's allegations may be broken down into two broad categories; those that allege fraud, and those that allege negligence.[4]  (Doc. 1.)  The fraud allegations must satisfy Rule 9(b) particularity pleading, whereas the negligence allegations must satisfy the plausibility pleading requirement of Rule 8(a).  *See* Fed. R. Civ. P. 8(a), 9(b).

### 1.    The Fraud Allegations

Rule 9(b) requires that a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  This requires the plaintiff to "set forth what is false or misleading about a statement, and why it is false."  *Yourish v. Cal. Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999) (internal citations omitted).  "In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading."  *Id.*  "This falsity requirement can be satisfied by pointing to inconsistent contemporaneous statements or information (such as internal reports) which was made by or available to the defendants."  *Id.* (internal citations omitted).

Not all statements made by a defendant may constitute grounds for fraud.  "Outrageous generalized statements, not making specific claims, [which] are so exaggerated as to preclude reliance by consumers" are considered puffery, and are not actionable.  *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990) (internal citations and quotations omitted).  However, "misdescriptions of specific or absolute characteristics of a product" are actionable.  *Id.* at

---

[4] Where diversity jurisdiction exists, the substantive law of the state in which the district court sits, including its choice of law rules, will apply.  Because this action was brought in this Court based on diversity jurisdiction, Plaintiff's state law tort claims are governed by Arizona law.  *See, e.g., Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 107–08 (1945).  However, the procedural aspects of the claims, including the pleading standards, will be governed by the Federal Rules of Civil Procedure.  *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102 (9th Cir. 2003) ("The Federal Rules of Civil Procedure apply irrespective of the source of subject matter jurisdiction, and irrespective of whether the substantive law at issue is state or federal.")

246.  Thus, a statement that one type of lamp is "far brighter" than another would be considered mere puffery, whereas a more definitive statement, such as that one type of lamp has "35,000 candle power and 10-hour life," would be actionable if it turned out to be false.  *See id.* (listing such a situation, outlined in *Smith-Victor Corp. v. Sylvania Elec. Prods., Inc.*, 242 F. Supp. 302 (N.D. Ill. 1965), as an example of an actionable statement).  Courts may resolve whether a statement constitutes mere puffery during a motion to dismiss.  *See Cook, Perkiss & Liehe, Inc.*, 911 F.2d at 245 ("District courts often resolve whether a statement is puffery when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and we can think of no sound reason why they should not do so.") (internal citations omitted).

### a.   Count 1: Securities Fraud–A.R.S. § 44-1991: All Defendants

In Arizona, it is unlawful for a person to do any of the following in connection with a transaction to offer to buy or sell securities, directly or indirectly:  (1) "[e]mploy any device, scheme or artifice to defraud;" (2) "make any untrue statement of material fact, or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading"; or (3) "engage in any transaction, practice or course of business which operates or would operate as a fraud or deceit."  A.R.S. § 44-1991(A).  "The requirement of materiality is satisfied by a showing of substantial likelihood that, under all the circumstances, the misstated or omitted fact would have assumed actual significance in the deliberations' of a *reasonable* buyer."  *Hirsch v. Arizona Corp. Comm'n*, 237 Ariz. 456, 463–64, 352 P.3d 925, 932–33 (Ct. App. 2015) (internal citations and quotations omitted).

Section 44-1991 exposes "any person, including any dealer, salesman or agent, who made, participated in or induced the unlawful sale or purchase" to liability.  A.R.S. § 44-2003(A).  However, "[n]o person shall be deemed to have participated in any sale or purchase solely by reason of having acted in the ordinary course of that person's professional capacity in connection with that sale or purchase."  A.R.S.§ 44-2003(A).  To

impose liability against an individual under § 44-1991, a plaintiff must assert that the defendant did more than "merely provide information that contributes to a buyer or seller's decision to close the deal." *Standard Chartered PLC v. Price Waterhouse*, 190 Ariz. 6, 22, 945 P.2d 317, 333 (Ct. App. 1996). Rather, the plaintiff must show a more direct tie between the fraudulent sale and the defendant, such as an allegation that the defendant "actively promoted a fraudulent transaction." *Id.* at 21.

Sierp's Complaint sufficiently alleges securities fraud against the Defendants. It alleges that DeGreen, in his role as an agent for DP and DCM, recruited Sierp and ensured his continued participation in DP through a number of fraudulent mechanisms. (Doc. 1 at 17.) Taking Sierp's allegations as true, in the spring of 2012, DeGreen sent emails boosting DP's impressive annual returns in excess of 40%, while simultaneously failing to mention that the company lost 26% of its value as of April 2012. (Doc. 1 at 6, 13.) DeGreen also claimed that he personally invested $1 million into the company, when in he did not. (Doc. 1 at 5, 6, 7, 15.) Throughout the time of Sierp's limited partnership at DP, DeGreen would repeat his personal commitment and financial investment to DP to reassure investors during DP's financial slumps, despite the fact that his actual financial commitment was far less than advertised. (Doc. 1 at 9, 11, 14–15.) DeGreen also assured Sierp that DP followed the same investment structure as DCM. (Doc. 1 at 6.) Specifically, DeGreen told Sierp that "DP invests in long-term options." (Doc. 1 at 6.) However, DeGreen admitted that during the first several months of 2013, DP, under his guidance, did not actually comport with this strategy. (Doc. 1 at 9.) Contrary to the Defendants' assertions, these allegations do not equate to the sort of vague, generalized assertions that can only be described as mere puffery. Rather, these assertions reflect "misdescriptions of specific or absolute characteristics" of DP, and therefore also of the securities that DeGreen was attempting to sell. *See Cook, Perkiss & Liehe, Inc.*, 911 F.2d at 246 (quoting *Stiffel Co. v. Westwood Lighting Grp.*, 658 F. Supp. 1103, 1115 (D.N.J. 1987)).

Sierp adequately alleged that these misrepresentations were material. For a fact to be considered material, a plaintiff must illustrate that there is a "substantial likelihood that, under all the circumstances, the misstated or omitted fact would have assumed actual significance in the deliberations' of a *reasonable* buyer." *Hirsch*, 237 Ariz. at 463–64 (internal citations and quotations omitted). Sierp states in his Complaint that he was "particularly motivated" to invest in DP by the representations that Degreen would continue to maintain his one million dollar investment in the company, that DP would follow the same strategies as DCM, and that DP was a "long term, three to five-year investment." This is sufficient to allege materiality. *Id.*

The Complaint also adequately alleges facts to maintain a cause of action against DeGreen under § 44-1991. The Complaint alleges that DeGreen "solicited Plaintiffs' investments in both DP and DCM," (Doc. 1 at 4), and that he used numerous fraudulent inducements, including those listed above, in doing so. (Doc. 1.) Section 44-1991 imposes liability on any person who "engage[s] in any transaction, practice or course of business which operates as a fraud or deceit." A.R.S. § 44-1991(A)(3). Therefore, contrary to the Defendants' assertion, the Plaintiffs are not attempting to hold DeGreen liable "solely by reason of being a member" of DCM; rather, they are alleging that he made fraudulent statements to them in connection with the sale of the securities.[5] A.R.S. § 29-651. Sierp alleged sufficient facts that DeGreen did more than "merely provide information that contributes to a buyer or seller's decision to close the deal," and thus he may assert a claim against DeGreen personally for violating § 44-1991. *Standard Chartered PLC*, 190 Ariz. at 22.

The facts alleged in the Complaint are sufficient to demonstrate "the who, what, when, where, and how of the misconduct charged" of the securities fraud claim, as required by Rule 9(b). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Plaintiffs have sufficiently stated a claim in Count 1 of their complaint.

---

[5] The Defendants repeat this argument for every claim in which DeGreen is listed as a defendant for a cause of action based on a primary liability theory. For these same reasons the argument is insufficient at this stage to merit dismissal as to those counts. .

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

           **b.**      **Count 2: Fraud in the Provision of Investment Advisory Services– A.R.S. § 44-3241: DCM and DeGreen.**

Pursuant to Arizona law, it is unlawful for any individual, "in connection with a transaction or transactions within or from this state involving the provision of investment advisory services, directly or indirectly" to 1) "employ any device, scheme or artifice to defraud, 2) "make any untrue statement of material fact, or fail to state any material fact necessary in order to make the statement made, in the light of the circumstances under which it was made, not misleading," 3) "misrepresent any professional qualifications with the intent that the client rely on the misrepresentation," or 4) "engage in any transaction, practice or course of business that operates or would operate as a fraud or deceit." A.R.S. § 44-3241.

Arizona law broadly defines the term "investment advisor" to include "any person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing or selling securities." A.R.S. § 44-3101(5). The statute defines "investment advisor representative" to include "any partner, officer or director of an investment adviser, any individual who occupies a status or performs functions similar to a partner, officer or director of an investment adviser or any other individual who is employed by or associated with an investment advisor" that "makes any recommendations or otherwise renders advice regarding securities," "manages accounts or portfolios of clients," or "solicits, offers, or negotiates for the sale or sells investment advisory resources." A.R.S. § 44-3101(6).

The Defendants contest that DeGreen is not an "investment advisor" pursuant to A.R.S. § 44-3101(5), and therefore he cannot be held primarily liable under A.R.S. § 44-3241. This is incorrect. A.R.S. § 44-3241 imposes liability on any "person, in connection with a transaction or transactions within or from this state involving the provision of investment advisory services" that "directly or indirectly" commits the fraud outlined above. A.R.S. § 44-324. The factual allegations of the complaint are sufficient

to make it plausible that DeGreen is either an "investment advisor," or an "investment advisor representative." Thus Defendants' argument provides no basis to dismiss this count at this stage.

The Defendants also allege that the Complaint failed to meet the particularity pleading requirement of Rule 9(b).  (Doc. 22 at 5.)  This assertion fails. Sierp alleges sufficient facts to state a claim that DCM and DeGreen violated § 44-3241(A). Specifically, Sierp contends that DeGreen violated § 44-3241(A) by:  (1) advertising a false rate of return and historical performance data; (2) expressing a track record involving options and LEAPS without having knowledge or intention of implementing such an investment strategy; (3) expressing false intentions to personally invest over a period of years in substantial amounts; (4) expressing false intentions to implement certain investment strategies throughout the anticipated lifetime of DP investments; and (5) expressing false and misleading information concerning the nature, purpose, and operation of the waiver.  (Doc. 1 at 20–21.)

These claims do not amount to mere puffery. DeGreen's emails on behalf of DCM soliciting the Plaintiffs' investment included specific numbers, not generalized assurances.  (Doc. 1 at 5.)  DeGreen assured Sierp that he invested one million dollars of his personal funds in the company, and that he would continue to be personally invested in the company.  (Doc. 1 at 7.)  Furthermore, the Complaint alleges that DeGreen, "knowing that Mr. Sierp had been investigating DCM for potential investment management," affirmatively misrepresented the strategies utilized by DP.  (Doc. 1 at 5.) These allegations form the basis of distinct characteristics of the securities DeGreen was seeking to sell, and cannot be said to be "so exaggerated as to preclude reliance by consumers."  *Cook, Perkiss & Liehe, Inc.*, 911 F.2d at 246.  Therefore, Defendants assertions that DeGreen's statements on behalf of DCM amounted to mere puffery are rejected.   Plaintiffs have sufficiently stated a claim in Count 2 of the Complaint.

### c. Count 3: Violation of A.R.S. § 44-1998: All Defendants

Arizona law permits an individual to recover against "any person who offers or sells a security by means of a prospectus or oral communication that includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements . . . not misleading." A.R.S. § 44-1998. While there is limited guidance on what constitutes a "prospectus" for the purposes of A.R.S. § 44-1998, the Supreme Court held that "the word 'prospectus' is a term of art referring to a document that describes a public offering of securities by an issuer or controlling shareholder." *Gustafson v. Alloyd Co., Inc.,* 513 U.S. 561, 584 (1995). Although Arizona courts are not "bound by the interpretation placed by the United States Supreme Court on the federal statute, it is helpful, for consistency in the application of the law, to be harmonious with the United States Supreme Court" when interpreting Arizona statutes that act as counterparts to federal law. *State v. Gunnison*, 127 Ariz. 110, 112, 618 P.2d 604, 606 (1980).

Here, Sierp alleged that "[o]n April 30, 2012, DeGreen hosted Mr. Sierp and other potential investors for a presentation about DP and provided  . . . a power point presentation advertising the alleged performance of DP." (Doc. 1 at 7.) Sierp further claims that during this presentation, DeGreen represented that he personally invested $1 million in DP, and that the investment was long-term: three to five years. (Doc. 1 at 7–8.) In this context, the power point presentation was acting as "a document that describes a public offering of securities by an issuer or controlling shareholder." *Gustafson*, 513 U.S. 561, 584 (1995) (defining the term prospectus under Sections 10 and 12 of the Securities Act of 1933).

Sierp adequately alleged facts sufficient to show that DeGreen's oral communications and presentation on behalf of DCM and DP contained "untrue statement[s] of a material fact or omits to state a material fact necessary in order to make the statements . . . not misleading." A.R.S. § 44-1998. The Complaint alleges that the Defendants made untrue statements by (1) advertising a rate of return and other historic

performance data for DP that "falsely reflected the most current, available performance data," (2) "expressing a track record involving options and LEAPS without, upon information and belief, having the requisite knowledge" to do so, (3) expressing false intentions regarding DeGreen's personal commitment to invest in DP, (4) "expressing false intentions regarding the investment strategies to be implemented" by DP,  and (5) "expressing false and misleading information concerning the purpose for, nature, and operation of the waivers demanded by DeGreen."  (Doc. 1 at 21–22.)  As addressed in the preceding sections, the specific facts alleged in connection to these claims, including but not limited to DeGreen's representations that he invested $1 million dollars in DP and the inflated return rates, are not puffery.  Plaintiffs have sufficiently stated a claim in Count 3 of the Complaint.

### d.   Count 4:   Control Person Liability–Violation of A.R.S. § 44-1999: DCM and DeGreen

To bring a claim under A.R.S. § 44-1999, also known as control person liability, a plaintiff must allege (1) a primary violation of the A.R.S. §§ 44-1991 or 44-1992 and (2) that the Defendants had actual power or control over the primary violator.  *E. Vanguard Forex, Ltd. v. Ariz. Corp. Comm'n*, 206 Ariz. 399, 410, 79 P.3d 86, 97 (App. 2003) (citing A.R.S. § 44-1999(B)).   Arizona courts "interpret § 44-1999(B) as imposing presumptive control liability on those persons who have the *power* to directly or indirectly control the activities of those persons or entities liable as primary violators of §§ 44-1991 and -1992."  *E. Vanguard Forex, Ltd.*, 206 Ariz. at 412 (emphasis in original).  "Like other portions of the Arizona Securities Act, this section should be 'liberally construed to [a]ffect its remedial purpose of protecting the public interest.'" *Facciola v. Greenberg Traurig, LLP*, 781 F. Supp. 2d 913, 923 (D. Ariz. 2011) (quoting *E. Vanguard Forex Ltd.,* 206 Ariz. at 411).  Having already determined that the Plaintiffs adequately alleged their fraud claims under A.R.S. §§ 44-1991 pursuant to Rule 9(b), the sole question here is whether the Plaintiffs complied with Rule 8(a) to adequately allege that DCM and DeGreen may be liable as control persons under the statute.

Here, Sierp alleged sufficient facts to illustrate that DCM and DeGreen can be

held liable as control persons. The Complaint alleges that DCM acted as "General Partner of DeGreen Partners." (Doc. 1 at 2.) As such, DCM had "sole discretion of making investments on behalf of the partnership." (Doc. 1 at 3.) Furthermore, the Complaint alleges that DeGreen was Managing Member of DCM, and in that role he "personally controlled and directed operations of DP." (Doc. 1 at 3.) The Complaint cited to one of DP's internal memorandums, which stated that "Keith DeGreen, the Managing Member, or a member of his investment team, will select potential investments in accordance with the General Partner's proprietary investment-selection procedures." (Doc. 1 at 4.) Therefore, Sierp properly alleged that A.R.S. § 44-1999(B) attaches control liability to DCM and DeGreen because DCM had the legal power to control DP as its General Partner, and DeGreen had the legal power to control DCM, as its Managing Member. *See E. Vanguard Forex, Ltd.*, 206 Ariz. at 412 ("[T]o satisfy the first prong of § 44–1999(B), the evidence need only show that the person targeted as a controlling person had the legal power, either individually or as part of a control group, to control the activities of the primary violator."). Plaintiffs have adequately alleged facts sufficient to state a claim in Count 4 of their complaint.

### e.   Count 7: Negligent Misrepresentation: All Defendants

Under Arizona tort law, "[a] claim for relief for negligent misrepresentation is one governed by the principles of the law of negligence." *Pettay v. Ins. Mktg. Servs., Inc. (W.)*, 156 Ariz. 365, 368, 752 P.2d 18, 21 (Ct. App. 1987). Therefore, "there must be a duty owed and a breach of that duty before one may be charged with the negligent violation of that duty." *Van Buren v. Pima Cmty. Coll. Dist. Bd.*, 113 Ariz. 85, 87, 546 P.2d 821, 823 (1976) (citations and quotations omitted). Arizona courts have outlined the elements of the cause of action as:

> (1) the defendant provided false information in a business transaction; (2) the defendant intended for the plaintiff to rely on the incorrect information or knew that it reasonably would rely; (3) the defendant failed to exercise reasonable care in obtaining or communicating the information; (4) the

plaintiff justifiably relied on the incorrect information; and (5) resulting damage.

*KB Home Tucson, Inc. v. Charter Oak Fire Ins. Co.*, 236 Ariz. 326, 333 n.7, 340 P.3d 405, 412 n.7 (Ct. App. 2014).  Negligent misrepresentation sounds in fraud, and therefore it is subject to the pleading requirements of Rule 9(b).  *See Lorona v. Ariz. Summit Law Sch., LLC*, 151 F. Supp. 3d 978, 993 (D. Ariz. 2015); *Gould v. M & I Marshall & Isley Bank*, 860 F. Supp. 2d 985, 988 (D. Ariz. 2012) (applying the Rule 9(b) pleading requirements to an Arizona negligent misrepresentation claim).

The Complaint adequately pleads the "circumstances" required by Rule 9(b). *See Vess*, 317 F.3d at 1106.  The Complaint alleges that the Defendants owed a duty of care to the Plaintiffs because they "offered to invest and manage assets of Plaintiffs," "represent[ed] and offer[ed] to Plaintiffs specialized knowledge concerning investment strategies," and "manag[ed] the operations and investments of DP." (Doc. 1 at 26.)  This is sufficient to allege that the Defendants owed the Plaintiffs a duty of care. *See* Restatement (Second) of Torts § 552 (explaining that an individual with an economic interest in a business transaction has a duty to "use reasonable care or competence" in obtaining and communicating information provided for the guidance of another in the transaction.)

The Complaint goes on to allege that the Defendants breached this duty by (1) advertising false rates of return, (2) expressing a track record utilizing "options and LEAPS without, upon information and belief, having the requisite knowledge or intentions" to do so, (3) DeGreen's "expressing false intentions" to continue to invest in the business personally, (4) falsely claiming that the investment strategies used by DCM would be copied by DP, and (5) encouraging the Plaintiffs to sign the waivers under false pretenses.   (Doc. 1 at 27.)   The Complaint alleges specific facts to support these allegations, including quotes from numerous emails and statements made by DeGreen. (Doc. 1 at 5, 6, 7, 8, 9, 10).  For example, the Complaint alleges that DeGreen "tied the methodology used by DP to DCM, knowing that Mr. Sierp had been investigating DCM

for potential investment management." (Doc. 1 at 5.) To this end, DeGreen sent Mr. Sierp an email on April 13, 2012 asserting that DP "applied the same research techniques that DeGreen Capital Management (DCM) uses." (Doc. 1 at 6.) Therefore, the Plaintiffs have adequately alleged a claim in Count 7 of their Complaint.

### f.   Count 8: Common Law Fraud: All Defendants

To assert a claim for common law fraud under Arizona law, a plaintiff must allege the following elements:

> (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) the speaker's intent that the information should be acted upon by the hearer and in a manner reasonably contemplated, (6) the hearer's ignorance of the information's falsity, (7) the hearer's reliance on its truth, (8) the hearer's right to rely thereon, and (9) the hearer's consequent and proximate injury.

*Taeger v. Catholic Family and Cmty. Servs.*, 196 Ariz. 285, 294, 995 P.2d 721, 730 (Ct. App. 1999) (citation omitted). Additionally, "while a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the circumstances of the fraud must be stated with particularity is a federally imposed rule." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

Sierp's allegations meet each of these elements. As discussed throughout this order, Sierp sufficiently alleged that the Defendants intentionally made false and misleading statements and omissions regarding existing facts concerning the investment. (Doc. 1 at 29.) Specifically, the Complaint alleges that DeGeen misrepresented the actual returns of DP in multiple emails to Sierp and other investors. (Doc. 1 at 13.) It also alleges that DeGreen assured investors that he invested one million dollars of his personal funds in the enterprise, even though he conceded to Sierp that the true number was closer to 650,000 dollars. (Doc. 1 at 5, 7.) According to Sierp's Complaint, he subsequently discovered that DeGreen's actual investment was only 50,000 dollars by September

- 15 -

2013, even though he had previously informed Sierp that an individual had to maintain a 250,000 dollar investment to obtain a share in the net profits of DP.  (Doc. 1 at 4, 14–15.)

Sierp also made allegations that indicate DeGreen made false statements regarding DCM's present intentions with respect to future DP investment strategies in an attempt to convince Sierp to invest with DP.  (Doc. 1 at 5, 6.)  While "claims for fraud generally cannot lie where the allegedly false or misleading representation pertains to future prospects or performance . . . forward-looking statements are actionable when the Defendants make the statements with actual knowledge that projections, promises, or expectations will not be met."  *Allstate Life Ins. Co.*, 756 F. Supp. 2d 1113, 1165 (D. Ariz. 2010) (internal citations and quotations omitted).  Sierp alleged that DeGreen "tied the methodology of DP to DCM, knowing that Mr. Sierp had been investigating DCM for potential investment management" and continued to assert that he "avoid[s] short term option trading strategies" despite the reality that the firm wholly abandoned DCM's strategies in 2014.  (Doc. 1 at 5, 16.)  In light of these allegations, Plaintiffs have adequately alleged a claim in Count 8 of their Complaint.

### 2.      The Remaining Tort Claims

The remaining tort claims do not sound in fraud, and thus they need only meet the pleading requirements of Rule 8(a).  The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' "  *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555) (internal citations omitted).

### a.      Count 5: Breach of Fiduciary Duty: All Defendants

Sierp adequately alleged that the Defendants owed a fiduciary duty to the Plaintiffs. In Arizona, "A partner stands in a fiduciary relationship to his co-partner." *Jerman v. O'Leary*, 145 Ariz. 397, 402, 701 P.2d 1205, 1210 (Ct. App. 1985) (citing *Hurst v. Hurst,* 1 Ariz. App. 603, 405 P.2d 913 (1965)).  The Complaint alleges that the Defendants and Sierp were all partners through their Limited Partnership Agreement.

(Doc. 1 at 8.)  It also states that at all relevant times Defendants "had complete control and sole discretion" over Sierp's investments, which is a significant entrusting of power and sufficient to show a fiduciary relationship in and of itself.  (Doc. 1 at 24.)

The Complaint's allegations also sufficiently state that the Defendants breached this duty. Specifically, Sierp alleges Defendants breached this duty:  (1) by misleading Sierp about the financial condition, performance, and investment strategies planned and implemented by DP; (2) by misleading Sierp about DeGreen's personal investment in DP; (3) by speculating on options without requisite knowledge; (4) by shifting to high risk investment actions; and (5) by failing to disclose conflicts inherent in DeGreen bring a DP investor.  (Doc. 1 at 24.)  Therefore, Defendants' motion to dismiss this claim based on failure to state a claim is denied.

### b.      Count 6:  Negligence: All Defendants

In Arizona, "[t]he elements of actionable negligence are the existence of a duty owed by the defendant to the plaintiff, a breach of that duty and an injury proximately caused by that breach." *Flowers v. K-Mart Corp.*, 126 Ariz. 495, 497, 616 P.2d 955, 957 (Ct. App. 1980) (internal quotes and citation omitted).

Here, Sierp alleges that the Defendants owed him a duty of care because they undertook "the management and control of Plaintiffs' investments." (Doc. 1 at 25.)  The Complaint alleges that the Defendants breached this duty by (1) by misleading Sierp about the financial condition of DP, (2) by misleading Sierp regarding the amount of DeGreen's investments in DP, (3) by speculating on options without the requisite knowledge, (4) by procuring a waiver through threats, by shifting to high-risk investment strategies, (5) by shifting to "the high risk and speculative actions in 2014 that led to the 65% loss of capital account value in just a few weeks," and (6) by not disclosing conflicts inherent in DeGreen being a DP investor while making all the investment decisions for the limited partners.  (Doc. 1 at 25.)  The Plaintiffs claim that they have been damaged by the Defendants' breach--specifically that the Plaintiffs lost 81% of their investment principle in DP by the time the company finally closed down.  (Doc. 1 at 12, 25.)  The

Plaintiffs allege that had they known the truth, "they would not have invested in DP in the first place." (Doc. 1 at 15.) Moreover, "had Defendants not continued to create and maintain false perceptions" regarding DP's performance, "Plaintiffs would have known the truth and divested their investment and avoided losses." (*Id.*) These facts are sufficient to state a plausible claim against the Defendants under a negligence theory of liability.

### 3. Affirmative Defenses

"[T]he assertion of an affirmative defense may be considered properly on a motion to dismiss where the 'allegations in the complaint suffice to establish' the defense." *Sams v. Yahoo! Inc.,* 713 F.3d 1175, 1179 (9th Cir. 2013) (quoting *Jones v. Bock,* 549 U.S. 199, 215 (2007)). However, "[i]f, from the allegations of the complaint as well as any judicially noticeable materials, an asserted defense raises disputed issues of fact, dismissal under Rule 12(b)(6) is improper." *ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014). Therefore, "[d]ismissal under Rule 12(b)(6) on the basis of an affirmative defense is proper only if the defendant shows some obvious bar to securing relief on the face of the complaint." *Id.*

### a. Liability Disclaimer and Waiver

Defendants assert that some of the Plaintiffs' claims are barred by a limitation of liability clause within DP's Limited Partnership Agreement ("LPA"), and that all of the Plaintiffs' claims are barred by the broad "Waiver of Claims" document that the Plaintiffs signed in late August 2013. (Doc. 22 at 6, 13.) However, the Plaintiffs present challenges to the validity of both of those documents. First, the Plaintiffs argue that the Limited Partnership Agreement was procured by fraud, and is therefore void in its entirety, including the limitation of liability clause. (Doc. 25 at 15–16.) Second, the Plaintiffs argue that the waiver is invalid because it was not supported by consideration and was based on misrepresentation, coercion, duress, or all three. (Doc. 25 at 6–7.)

These arguments present questions of law and fact that cannot be determined on a motion to dismiss. Both the waiver and the limitation of liability clause constitute

attempts to bargain away tort liability, and therefore require the consideration of whether "the parties did, in fact, bargain for the limitation." *Salt River Project Agric. Improvement & Power Dist. v. Westinghouse Elec. Corp.*, 143 Ariz. 368, 694 P.2d 198 (1984), *abrogated in part by Phelps v. Firebird Raceway, Inc.*, 210 Ariz. 403, 111 P.3d 1003 (2005). Furthermore, the Plaintiffs are alleging that the limitation of liability clause was obtained by fraud, and is thus unenforceable. These are questions that cannot be resolved without factual development, and thus it would be improper to dismiss the Complaint at this stage in the proceedings based on the releases. *ASARCO, LLC*, 765 F.3d at 1004.

### b. Statute of Limitations and Repose

Generally, a court should only grant a motion to dismiss based on the running of the statute of limitations "if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206–07 (9th Cir. 1995) (quoting *Jablon v. Dean Witter & Co.,* 614 F.2d 677, 682 (9th Cir. 1980)). There are a number of statutes of limitations at play in this case.

The statute of limitations for Counts 1, 3 and 4 are found in § 44-2004, which provides the statute of limitations for all claims brought under Arizona's securities laws unless the individual statute proscribes a different limitation. Sections 44-1991 and 44-1999 do not proscribe a different limitation, and thus they are each subject to the statute of limitations contained in § 44-2004(B). A claim brought under either of these statutes must be "brought within two years after discovery of the fraudulent practice on which the liability is based, or after the discovery should have been made by the exercise of reasonable diligence." A.R.S. § 44-2004(B). Section 44-1998 is treated slightly differently under § 44-2004. A.R.S. § 44-2004(C). A claim brought under § 44-1998 must be brought within two years after the discovery of the untrue statement or the omission," and "no more than five years after the sale of the security." *Id.* Therefore, Counts 1, 3 and 4 are subject to a two year statute of limitations, but Count 3 is further

1   limited because it must be brought within five years of the sale of security in question,

2   regardless of when the fraudulent practice is discovered. Counts 5, 6 and 7 are subject to

3   a two-year statute of limitations. A.R.S. § 12-542. Count 8 must be "commenced and

4   prosecuted within three years after the cause of action accrues." A.R.S. § 12-543.

5          The parties in this case do not agree as to when the statutes of limitations began to

6   run in any of these claims, and thus this affirmative defense raises questions of law and

7   fact that make its determination improper at this time. Arizona follows the discovery

8   rule, which stands for the proposition that "a cause of action does not accrue until the

9   plaintiff knows or with reasonable diligence should know the facts underlying the cause."

10  *Doe v. Roe*, 191 Ariz. 313, 322, 955 P.2d 951, 960 (1998). Furthermore, Arizona law

11  tolls statutes of limitation if the defendants engage in "[f]raud practiced to conceal a

12  cause of action." *Acton v. Morrison*, 62 Ariz. 139, 144, 155 P.2d 782, 784 (1945). Both

13  of these tolling measures may be present in this case, and this Court will not dismiss

14  Plaintiffs' claims before they have the opportunity to develop their arguments through

15  discovery. Thus, the Defendants' motion to dismiss based on statutes of limitation is

16  denied.

17         Count 2, which alleges a violation of § 44-3241, is "barred unless it is brought

18  within three years after the violation or within two years after discovery of the facts

19  constituting the violation, whichever occurs first." A.R.S. § 44-3241(B). This statute is

20  part statute of limitations and part statute of repose. The language of the statute indicates

21  that it "is intended to establish a limit beyond which no suit may be pursued, and sets a

22  period of time within which claims must be brought regardless of when the cause of

23  action may accrue." *Albano v. Shea Homes Ltd. P'ship*, 227 Ariz. 121, 127, 254 P.3d

24  360, 366 (2011) (internal quotations omitted).

25         Statutes of repose are fundamentally different from statutes of limitation, because

26  "under statutes of repose, a claim may be barred if it does not accrue within the allowable

27  statutory period." *Id.* at 127. Common law equitable tolling does not generally apply to

28  statutes of repose because it would permit "judge-made doctrine to trump the statutory

language reflecting the clear intent of the legislature." *Sullivan v. Pulte Home Corp.*, 231 Ariz. 53, 58, 290 P.3d 446, 451 (Ct. App. 2012), *vacated in part*, 232 Ariz. 344, 306 P.3d 1 (2013).  There is no express language in the statute or any other indication of legislative intent to apply tolling principles to § 3241, and thus the Court will not apply equitable tolling to claims filed under § 3241. *See Moore v. Browning*, 203 Ariz. 102, 110, 50 P.3d 852, 860 (Ct. App. 2002) (declining to apply equitable tolling due to the absence of "any [legislative] intent to toll the statute of repose.").

The initial investment in this case occurred on June 1, 2012.  Therefore, if Sierp desired to bring a cause of action under § 3241 for the initial investment, he needed to do so by June 1, 2015.  Sierp did not file suit until January 26, 2016.  Thus, his claims under § 3241 involving the initial investment are barred.  However, the Complaint appears to allege other violations of §3241 that occurred in early 2013, including DeGreen's false statements regarding the waiver and his false assurances that he remained an investor in DP.  These claims were filed within three years of the violation, and at this stage in the proceedings it is not clear that they were filed more than two years "after discovery of the facts." A.R.S. § 44-3241(B).  Therefore, any claim filed under § 44-3241 that did not occur within three years of the time the Complaint was filed (January 26, 2016) is dismissed.  Any other viable claims asserted under this statute will not be dismissed.. A.R.S. § 44-3241(B).

### c.    Failure to Plead Loss Causation

In order to state a claim for relief for Counts 1 (Violation of A.R.S. § 44-1991), Count 5 (Breach of Fiduciary Duty), Count 7 (Negligent Misrepresentation), and Count 8 (Common Law Fraud), Plaintiffs must plead loss causation.  Loss causation is nothing more than proximate cause—"the allegedly unlawful conduct caused the economic harm."  *Grand v. Nacchio*, 214 Ariz. 9, 19, 147 P.3d 763, 773 (App. 2006) (quoting *AUSA Life Ins. Co. v. Ernst & Young,* 206 F.3d 202, 209 (2d Cir. 2000)).  The pleading requirements for loss causation are not stringent standards.  *See id.* at 20 ("[U]nder the Restatement, if a plaintiff shows the misrepresentations affected the financial health of an

entity and, consequently, the value of the plaintiff's stock, the plaintiff has made a sufficient showing of proximate cause.").

"It is unclear in this Circuit whether Rule 9(b)'s heightened pleading standard or whether Rule 8(a)(2)'s short and plain statement applies to allegations of loss causation." *WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1053 (9th Cir. 2011).   "However, it is unnecessary to decide that issue, because the [Complaint] offers sufficient detail to give defendants ample notice of [the] loss causation theory, and [gives] some assurance that the theory has a basis in fact."   *Id.*   Here, along with the allegations that Defendants noted, Sierp alleges that Defendants abandoned the LEAPS investment strategy and began short-term option trading strategies.  (Doc. 1 at 16.)  Sierp alleges that this shift resulted in "precipitous losses" one month before Defendants recommended the end of DP.  (*Id.*)  Sierp further alleges that DeGreen conceded that losses resulted from this in an e-mail sent to Sierp in May 2013:  "Frankly, my focus on trying to protect against week-to-week fluctuations has been detrimental to performance, and is not consistent with our investment discipline of identifying the strongest candidates for growth long–term."  (Doc. 1 at 9.)  The Court finds that these allegations are sufficient to allege loss causation at this stage in the pleadings, and thus the Defendants' motion is denied.

### 4.     Attorney's Fees & Costs under A.R.S. § 44-2001 (A).

A.R.S. § 44-2001(A) provides relief for a plaintiff in the form of rescission or in damages.  Specifically, the statute states that if a defendant sells securities in violation of Arizona's securities laws, the sale is

> voidable at the election of the purchaser, and the purchaser may bring an action in a court of competent jurisdiction to recover the consideration paid for the securities, with interest, taxable court costs and reasonable attorney fees, less the amount of any income received by dividend or otherwise from ownership of the securities, on tender of the securities purchased or the contract made, or for damages if the purchaser no longer owns the securities.

A.R.S. § 44-2001. Therefore, under the text of the statute, it is unclear whether "damages" should be read to include attorney's fees. "In Arizona, courts generally do not construe 'damages' to include attorneys' fees." *City Ctr. Exec. Plaza, LLC v. Jantzen*, 237 Ariz. 37, 41, 344 P.3d 339, 343 (Ct. App. 2015). However, exceptions to this rule do exist, including "where attorneys' fees are a legal consequence of an original wrongful act or any of the other situations where attorneys' fees can be considered damages." *Id.* at 42.

Defendants argue that the Court has the ability to strike the request for attorney fees under Federal Rule of Civil Procedure 12(f), which provides the Court with the ability to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). For the reasons detailed above, it is less than clear that the Plaintiffs cannot seek attorney's fees under § 44-1991, as they have alleged that the Defendants acted fraudulently. At any rate, the Ninth Circuit has held that "Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974–75 (9th Cir. 2010). Thus, even if Defendants are correct in their assertion that Plaintiffs' quest for attorney's fees under § 44-2001 must ultimately fail because it is precluded by law, it would be improper for the Court to strike the request. *Id.* The Defendants' motion to strike the Plaintiffs' request for attorney's fees is denied.

## CONCLUSION

For the foregoing reasons, the Plaintiffs have adequately stated claims for relief that satisfy Rule 12(b)(6). However, §3241(B) bars Sierp from bringing any of his claims alleging a violation of §3241(A) that did not occur within three years of filing the Complaint or within two years of his discovery. Therefore, Count 2 is dismissed as to the violations stemming from the initial investment on June 1, 2012. None of the Defendants' other affirmative defenses demonstrate "some obvious bar to securing relief on the face of the complaint," and thus the motion to dismiss based on the other defenses

is denied. *ASARCO, LLC.*, 765 F.3d at 1004.  Likewise, the Court finds that pursuant to *Whittlestone*, it would be improper to strike the Plaintiffs' request for attorney's fees. *Whittlestone, Inc.*, 618 F.3d at 974–75.

**IT IS THEREFORE ORDERED** that the Defendants' Motion to Dismiss (Doc. 22) is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that the Defendants' Motion to Strike (Doc. 22) is **DENIED**.

Dated this 6th day of January, 2017.

Honorable G. Murray Snow
United States District Judge